1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9            **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   DENNIS GRETSINGER,                        CASE NO. 06CV970 WQH (POR)

12                            Plaintiff,        ORDER RE: DEFENDANT'S
                  vs.                           MOTION FOR JUDGMENT ON THE
13                                              PLEADINGS
     HAMILTON SUNDSTRAND POWER
14   SYSTEMS,

15                            Defendant.

16

17   HAYES, Judge:

18          Pending before the Court is Defendant Hamilton Sundstrand Power Systems' motion for

19   judgment on the pleadings.  (Doc. # 9).  The Court finds the matter suitable for submission on the

20   papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1).

21                    **ALLEGATIONS OF THE COMPLAINT**

22          Between November 17, 1997, and January 15, 2002, Defendant Hamilton Sundstrand Power

23   Systems (Defendant) employed Plaintiff Dennis Gretsinger (Plaintiff) as a tooling specialist.

24   *Complaint*, at 2, ll. 2-4.  In January of 2002, Defendant laid off six or seven employees, including

25   Plaintiff.  *Compl.*, at 2, ll. 2-7.  In a letter to Plaintiff dated January 17, 2002, Defendant notified

26   Plaintiff that he was being laid off due to a reduction in force caused by a lack of available work in

27   Plaintiff's classification.  *Compl.*, at 2, ll. 5-7.  In a second letter to Plaintiff dated March 14, 2002,

28   Defendant indicated that Plaintiff, as well as other union and nonunion employees, were laid off,

1  based on reduced workloads following the disaster of 9/11 causing the overall need to
2  reduce staffing and to meet the lower sales level for Hamilton Sundstrand Power
   Systems.

3  *Compl.*, at 2, ll. 9-12.

4  By September of 2002, every union employee that had been laid off in January of 2002, had

5  either been recalled or had received offers to be recalled, except for Plaintiff. *Compl.*, at 2, ll. 14-19.

6  Though Defendant employs approximately 195 union employees, Plaintiff is the only union employee

7  laid off in January of 2002 who has not been recalled. *Compl.*, at 2, ll. 16-19. Plaintiff is currently

8  registered for recall rights. *Compl.*, at 2, l. 25. Since January of 2002, Defendant has hired over 35

9  new union employees to positions other than tooling specialist. *Compl.*, at 3, ll. 13-14.

10  During the time Plaintiff worked for Defendant, Plaintiff was a member of the International

11  Association of Machinists and Aerospace Workers Local Lodge 1125 (the Union), a labor union.

12  *Compl.*, at 2, ll. 14-19. During the time Plaintiff worked for Defendant, Plaintiff worked pursuant to

13  a collective bargaining agreement (CBA) signed by the Union and Defendant. *Compl.*, at 2, ll. 14-25.

14  Pursuant to Article 3.06(2) of the CBA,

15  The Company will continue the practice of recalling displaced/laid off employees to
   either their current or previously held classification(s) when an opening occurs, or a
16  classification to be trained before a new employee is hired.

17  *Compl.*, at 3, ll. 15-18.

18  Seeking to be reinstated as an employee of Defendant, and believing himself entitled to

19  reinstatement based on Article 3.06(2) of the CBA, Plaintiff filed grievances with the Union on

20  February 27, 2004, and April 13, 2005. *Compl.*, at 3, l. 21. Plaintiff alleges that Defendant and Union

21  negotiated the grievances in violation of the CBA, and did so in a secretive manner which did not

22  afford Plaintiff an opportunity to appear on his own behalf. *Compl.*, at 3, ll. 20-25. Union Area 1

23  Director Virginia Cobb (Cobb) responded to Plaintiff's grievances by letter on two separate occasions,

24  the first letter dated March 4, 2004, and the second letter dated June 24, 2005. *Compl.*, at 4, ll. 1-5.

25  Though neither letter mentioned Article 3.06(2) of the CBA specifically, in each letter Cobb stated

26  that Defendant was not contractually obligated to recall Plaintiff to classifications other than tooling

27  specialist. *Compl.*, at 4, ll. 1-5.

28  In the spring of 2005, the Union combined Plaintiff's CBA Article 3.06(2) grievances with an

additional grievance, regarding back-pay owed, which had also been filed by Plaintiff in April of 2004. *Compl.*, at 4, ll. 7-20. The Union labeled the combined grievances "Inquiry 05-01." *Compl.*, at 4, ll. 14-17. Plaintiff alleges that Defendant and the Union secretly negotiated a resolution to Inquiry 05-01. *Compl.*, at 4, l. 15. Plaintiff further alleges that after Defendant and the Union agreed to a resolution, Defendant sent Plaintiff a check for $563.73 in an attempt to settle the dispute. *Compl.*, at 4, ll. 15-16. In a letter dated June 30, 2005, Defendant's Human Resources Manager notified Plaintiff that Inquiry 05-01 would be closed after Plaintiff cashed the $563.73 check. *Compl.*, at 4, ll. 17-20. To date, Plaintiff has not cashed the check. *Compl.*, at 4, ll. 22-25.

On December 8, 2005, and still seeking to resolve his CBA Article 3.06(2) grievance, Plaintiff went to the Union's hall in San Diego and attempted to submit a third grievance. *Compl.*, at 5, ll. 5-9. As a basis for this third grievance, Plaintiff sought an explanation as to why he was not entitled to the protections of Article 3.06(2) of the CBA, something Plaintiff alleges that he had not been provided as of December of 2005. *Compl.*, at 5, ll. 11-14. The Union clerk who spoke with Plaintiff at the Union hall refused to process the grievance on December 8, 2005. *Compl.*, at 5, ll. 18-19.

Minutes after the Union clerk refused to process the grievance, Plaintiff spoke with Cobb at the Union hall. *Compl.*, at 5, ll. 21-24. Cobb told Plaintiff, "we even had one of our lawyers look into it . . . there's nothing we can do Dennis." *Compl.*, at 5, ll. 23-24. Thereafter, Plaintiff asked Cobb for a "logical explanation" as to why he was not entitled to employment with Defendant vis-a-vis Article 3.06(2) of the CBA. *Compl.*, at 6, ll. 3-5. Cobb agreed to provide that explanation in writing. *Compl.*, at 6, l. 5. Plaintiff never received a written explanation from Cobb. *Compl.*, at 6, ll. 14-20.

After not receiving a written response from Cobb, Plaintiff wrote a letter to Cobb and Gary Holt (Cobb's supervisor), requesting the name of the lawyer who had "looked into" Plaintiff's case, and also seeking further explanation regarding Article 3.06(2) of the CBA. *Compl.*, at 7-8. To date, Plaintiff has not received a response from either Cobb or Holt. *Compl.*, at 7, ll. 9-10.

On March 14, 2006, in a final attempt to resolve his grievances, Plaintiff sent a letter to Union President R. Thomas Buffenbarger. *Compl.*, at 7, ll. 24-25. Therein, Plaintiff urged Buffenbarger to address his December 8, 2005, grievance as soon as possible. *Compl.*, at 8, ll. 1-2. On March 23, 2006, Plaintiff received a copy of a letter Buffenbarger sent to Mr. Lee Pearson, the Vice President

of the Union's Western Territory.  *Compl.*, at 8, ll. 4-8.  In that letter, Buffenbarger indicated that Pearson was responsible for handling Plaintiff's grievance.  *Compl.*, at 8, ll. 6-8.  As of May 1, 2006, Pearson had yet to contact Plaintiff.  *Compl.*, at 8, ll. 7-8.

## PROCEDURAL HISTORY

On May 1, 2006, Plaintiff filed the Complaint in this matter, charging Defendant with violating Section 301 of the Taft-Hartley Act by not reemploying Plaintiff after Plaintiff had been laid off. (Doc. # 1).  Plaintiff seeks $1,000,000 in damages, or in the alternative, renewed employment with Defendant.  On May 22, 2006, Defendant answered, and asserted affirmative defenses including failure to state a claim upon which relief may be granted.  (Doc. # 4).  On September 13, 2006, Defendant moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Doc. # 9).

## STANDARD OF REVIEW

"A Rule 12(c) motion for judgment on the pleadings and a Rule 12(b)(6) motion to dismiss are virtually interchangeable," and a district court applies the same standard to each. *Sprint Telephony PCS, L.P. v. County of San Diego*, 311 F.Supp.2d 898, 902 (S.D. Cal. 2004), *citing* William W. Schwarzer, et al., Federal Civil Procedure Before Trial, § 9:319 (2003).  The basic difference between the two motions are,

> (1) the timing (a motion for judgment on the pleadings is usually brought after an answer has been filed, whereas a motion to dismiss is typically brought before an answer is filed) . . . and (2) the party bringing the motion (a motion to dismiss may be brought only by the party against whom the claim for relief is made, usually the defendant, whereas a motion for judgment on the pleadings may be brought be any party.)

*Sprint Telephony*, 311 F.Supp.2d at 902-903 (citations omitted).  A court ruling upon a motion for judgment on the pleadings may dismiss the cause of action, as opposed to granting judgment, and may also grant leave to amend.  *Id*. at 903.

When considering a motion for judgment on the pleadings a court must accept the complaint's factual allegations as true, and further, must construe the allegations in the light most favorable to the non-moving party.  *Id*.  "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  *Hal Roach Studios, Inc. v. Richard Feiner and*

1   *Company, Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).  If a district court grants judgment on the

2   pleadings or dismisses the Complaint with prejudice, it is a decision on the merits.  *General*

3   *Conference Corporation of Seventh-Day Adventists v. Seventh-Day Adventists Congregational*

4   *Church*, 887 F.2d 228, 230 (9th Cir. 1989).

5                                          **DISCUSSION**

6            Pursuant to § 301 of the Labor Management Relations Act (or Taft-Hartley Act), an individual

7   employee may bring suit against her employer in federal court for breach of a collective bargaining

8   agreement.  29 U.S.C. § 185; *see also DelCostello v. International Brotherhood of Teamsters*, 462

9   U.S. 151, 163 (1983); *Zuniga v. United Can Company*, 812 F.2d 443 (9th Cir. 1987).  Generally, an

10  employee is required to exhaust the applicable collective bargaining agreement's grievance or

11  arbitration remedies before she can bring suit.  *DelCostello*, 462 U.S. at 163.  However, where the

12  union representing the employee acts in such a "discriminatory, dishonest, arbitrary, or perfunctory

13  fashion as to breach its duty of fair representation," the employee may bring suit against either the

14  union or the employer "notwithstanding the outcome or finality of the grievance or arbitration

15  proceeding.  *Id*. at 164-65, *see also Vaca v. Sipes*, 386 U.S. 171 (1967).

16           In *DelCostello*, the United States Supreme Court established a six-month statute of limitations

17  for actions by employees against employers and unions for breaches of collective bargaining

18  agreements.  *DelCostello*, 462 U.S. at 171-72; *Grant v. McDonnell Douglas Corp.*, 163 F.3d 1136,

19  1138 (9th Cir. 1998); *see also* 29 U.S.C. § 160(b).  Though it is still an "open question" in the Ninth

20  Circuit as to when, precisely, the six-month statute of limitations begins to run, *see Harper v. San*

21  *Diego Transit Corp.*, 764 F.2d 663, 669 (9th Cir. 1985), it is either

22          when the employee learns, or should have learned, that his dispute was finally
            resolved, . . . or . . . when the employee learns, or should have learned, that the union
23          may have violated its duty of fair representation.

24  *Harper*, 764 F.2d at 669; *see also Zuniga*, 812 F.2d at 449.  Under the facts of this case, the statute

25  of limitations period should begin no later than the date upon which the Plaintiff received notice from

26  the Union that it would not pursue Plaintiff's grievance further.  *Zuniga*, 812 F.2d at 449; *McDonnell*

27  *Douglas Corp.*, 163 F.3d at 1138.

28           Plaintiff alleges that Defendant violated Article 3.06(2) of the CBA when it failed to reemploy

1  Plaintiff in a position comparable to tooling specialist after Plaintiff was laid off in January of 2002.

2  Plaintiff also alleges that the Union inadequately represented him in an unfair and secret manner.  In

3  moving for judgment on the pleadings, Defendant contends that the Complaint establishes that

4  Plaintiff failed to bring suit within the six-month statute of limitations.  Defendant requests that this

5  Court dismiss Plaintiff's Complaint with prejudice.

6          As noted above, the statute of limitations for claims of breach of a collective bargaining

7  agreement under § 301 of the Labor Management Relations Act is six-months, and the time begins

8  to run "when the employee learns, or should have learned, that his dispute was finally resolved, . . .

9  or . . . when the employee learns, or should have learned, that the union may have violated its duty of

10  fair representation."  *Harper*, 764 F.2d at 669; *Zuniga*, 812 F.2d at 449.  Here, construing the

11  Complaint in the light most favorable to Plaintiff, Plaintiff received notice from the Union regarding

12  his Article 3.06(2) grievance on three separate occasions.  The first notice appeared in a letter from

13  Cobb dated March 4, 2004.  In that letter Cobb (a representative of the Union) indicated that

14  Defendant was not contractually obligated to recall Plaintiff.  In response to Plaintiff's continued

15  inquiry, Cobb authored a second letter to Plaintiff dated June 24, 2005, wherein Cobb again indicated

16  that Defendant was not contractually obligated to recall Plaintiff.  Finally, on December 8, 2005, the

17  Union refused to file  an additional grievance by Plaintiff pertaining to Article 3.06(2) of the CBA,

18  and Cobb personally spoke with Plaintiff and told him  "we even had one of our lawyers look into it

19  . . . there's nothing we can do Dennis."  Continued inquiries by Plaintiff regarding the grievance

20  garnered no response from the Union.

21          Construing the allegations in the light most favorable to Plaintiff, the Court concludes that

22  Plaintiff received notice that the Union was not going to pursue Plaintiff's greivance further on March

23  4, 2004, the date of Cobb's first letter.  In that letter, Cobb notified Plaintiff that Defendant was not

24  contractually obligated to employ Plaintiff in an position other than tooling specialist.  As Plaintiff's

25  grievance sought reemployment to a position comparable to tooling specialist based on Article 3.06(2)

26  of the CBA–a provision which appears to require the retraining of union employees for new jobs in

27  some circumstances–it is clear that Cobb's first letter addressed Plaintiff's core issue, clearly stating

28  that Defendant did not have to reemploy Plaintiff in positions other than tooling specialist.  The Court

concludes that Plaintiff knew or should have known that the union would not pursue his grievance further after receiving Cobb's letter on March 4, 2004. Furthermore, even assuming that Cobb's letter of March 4, 2004, did not indicate that the union was not going to pursue Plaintiff's grievance futher, the Court concludes that Cobb's second letter would have. Like the first letter, Cobb's second letter, dated June 24, 2005, stated that Defendant was not contractually obligated to reemploy Plaintiff to any position other than tooling specialist. If it wasn't clear that the Union was not going to pursue Plaintiff's grievance further after the March 4, 2004 letter, it was certainly clear after the letter of June 24, 2005.

As the Court concludes that Plaintiff knew or should have known that the Union would not pursue his grievance further on March 4, 2004 (the date of Cobb's first letter), the six-month statute of limitations began to run on that date. Accordingly, for Plaintiff's Complaint to be timely, it would have had to have been filed on or before September 4, 2004. Plaintiff filed his Complaint on May 1, 2006 (Doc. # 1). As this was beyond the six-month statute of limitations, Plaintiff's Complaint was not timely.

A court considering a motion for judgment on the pleadings, "may dismiss causes of action rather than grant judgment." *Sprint Telephony*, 311 F.Supp.2d at 903; *see also Moran v. Peralta Cmty College Dist.*, 825 F.Supp. 891, 893 (N.D. Cal. 1993). Accordingly, the Court dismisses Plaintiff's Complaint (Doc. # 1).

**IT IS SO ORDERED**.

DATED:  January 3, 2007

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge